MOSES CURTIS' HEIRS, Ex Parte.

*Clerk and Master's Bond—Remedies.*

Where land was sold under proceedings in equity for change of investment in 1855, and in 1859 the title was made to the purchaser, the clerk and master ordered to pay the interest on the purchase money annually to the life tenant, and the cause was dropped from the docket; upon a re-docketing of the cause in 1878 after the death of the life tenant, and a motion by the remainder-man that the executrix of the clerk and master should be required to show cause why a judgment should not be entered against her for the amount of the purchase money and accrued interest : *Held*, that the remedy was not by a motion in the cause, but by a summary motion against the executrix and sureties of the clerk and master under Bat. Rev.. ch. 80, § 14, or by action upon his official bond.

MOTION heard at Spring Term, 1879, of McDOWELL Superior Court, before *Graves, J.*

Moses Curtis devised all his lands to Mary Curtis, his widow, for life, with remainder to his children as expressed in the will. The widow and children presented their petition *ex parte* to the court of equity of McDowell county at spring term, 1854, praying a sale of the lands, and investment of the proceeds, and the payment of the annual in-

terest to the widow during her life, and at her death, a division of the principal money among the children, share and share alike.

A sale was made under a decree in the cause by W. M. Carson, the then clerk and master, to Thomas L. Hemphill and William Spake, the aggregate amount of their purchases being $734, and on report filed, the sales were confirmed by the court, and an order thereafter made as follows: At fall term, 1855, the master was ordered to lend out the money first deducting the costs. At fall term, 1857, the master was ordered to pay over to Burgin, the guardian of the widow, all the interest which had accrued on the purchase money for her support.

At fall term, 1858, it appearing that the purchase money of the lands bought by Hemphill had been paid, it was ordered that title be executed therefor.

At spring term, 1859, an order was entered in the cause substituting Elijah Kester in the place of Burgin as guardian to the widow, and the clerk and master was ordered to pay the annual interest to him.

After spring term, 1859, the cause was dropped from the docket and did not again appear thereon, nor on the superior court docket until spring term, 1878, when the same was entered on the docket, accompanied by a petition in writing representing the death of the widow and alleging the non-payment to them of any part of the principal money.

It was further shown that Wm. Spake had died without paying for the lands bought by him, and C. L. Corpening, the clerk and master, since the time the money was ordered to be put at interest and the abolition of the court of equity, had died, and that Martha A. Corpening was his executrix, and it was prayed that they might be brought before the court by notice.

The court ordered notice to issue to the administrator of

Spake to show cause at the next term why he should not pay for the land purchased by his intestate, and to the executrix of the late clerk and master a similar notice to show cause why judgment should not be entered against her for the amount of the money paid to her testator in his official character and used by him, and in the last instance, it was ordered that service by publication should be sufficient, and it was referred to G. G. Eaves to take an account and report to the next term.

The executrix, Martha A. Corpening, pursuant to the published notice, came into court and by answer filed, showed for cause against the judgment prayed for, that the cause, in which the proceeding was had, was finally disposed of in 1859, and that the same was brought forward, without notice and without leave of the court, and she particularly objects to the manner of the service of the notice and to the order of account made before the publication of the notice.

Answering to the merits, the executrix alleged that the sale was made by Carson, the predecessor of her father in the office of clerk and master, and that she was ignorant how much he had received, and she disclaimed all knowledge of her testator's receiving any of the money, and averred her belief to be that if he ever received any of it, he had paid it out to those entitled.

At the hearing, the plaintiffs dismissed their motion as to Spake, thereby abandoning all ground of relief as to his purchases, but moved for an order of account of the purchase money which came to the hands of the testator of Martha A. Corpening and of the assets which came to her hands as his executrix legally applicable to their claim. His Honor refused the motion and from that refusal the appeal is taken by the petitioners.

*Messrs. P. J. Sinclair* and *W. H. Malone*, for petitioners.

DILLARD, J., after stating the case. No facts are found, nor is it stated for what reasons the motion of plaintiffs was refused, and therefore we can only examine the record and the admitted facts to determine if there was error.

Upon the adoption of our present system of courts, provision was made for the transfer into our present superior courts, at the option of any party interested, of all causes in the late courts of equity, wherein anything remained to be done that was material or necessary to the objects for which they were instituted. That provision of the law was continued and yet exists, as may be seen in section 412, chapter 17 of Battle's Revisal, and chapter 9, laws 1876–'77, so that under that authority the plaintiffs might immediately, on the establishment of our new system in 1868, have brought forward their case from the equity docket, if they had occasion to do so, and after entering it on the superior court docket, they might have made any appropriate motion therein which their interest required. But they did not do that. The record shows that they and the widow of Moses Curtis sold all the lands through the agency of the court, and that by consent the widow was to have the interest on the purchase money during her life, and accordingly the funds were decreed to be put to interest to be paid to the widow. It also showed title decreed to Hemphill for *his purchases*, and from the dismissal of the case as to Spake at the hearing, from which the appeal comes, it is implied that there was nothing to be done *as to him*. Thus it would seem that the cause was in substance at an end as to the money and the rights of the parties therein, and as to the execution of title to the purchasers, so that it might be dropped from the docket without any real necessity to require any further action on the part of the court.

The omission to transfer the cause not only indicates that it was regarded as finally disposed of, but there was no necessity of any aid from the court in getting the money at

the death of the widow. Upon any other supposition, the parties upon the death of the widow would have moved in the matter before the expiration of Corpening's office in 1868, and if not within that time, they would have moved before his death in 1875.

Upon these appearances, no reasonable explanation or account to the contrary being shown, His Honor might very reasonably have adjudged the equity cause as finally disposed of and left the parties to seek remedy for non-payment of their money, by suit on the clerk and master's bond. But let it be conceded that plaintiffs had never received the principal money, after the widow's death, could they make effectual the proceeding they resorted to against the executrix of the clerk and master? It is to be remembered that the plaintiffs, in their petition filed in the cause, base their claim to make the executrix responsible upon the allegation that Corpening wasted and used the money which came to his hands. If he did so, certainly, while he was in office and possibly after the abolition of his office, payment might have been enforced against him by a proceeding in the cause. But after his death how is that liability to be asserted against his estate?

No remedy operating *in personam* could be had against the personal representative. All the estate would be assets to pay the testator's debts to be administered in a due course of law, and the claim of the plaintiffs would be a debt only, and take its place in its proper class in the application of the assets.

Would the court, the scope of whose action in the cause was to sell the land and to decide as consented to by the parties, depart so far as to collect a mere debt against the estate of the clerk and master by administering his estate on a mere motion in the cause? Such a proceeding would be inconvenient and is without a precedent so far as we can find by the aid of counsel, or upon our own researches.

In the existing state of things, in our opinion, the remedy of the plaintiffs, if any they have, is by summary motion against the executrix and the sureties of the clerk and master under Bat. Rev., ch. 80, § 14; or by an action on the bond of the clerk and master and not by a notice or rule in the equity cause.

There was no error in the court below in the refusal of the plaintiffs' motion for judgment and for account of the assets of the clerk and master, and this will be certified.

No error.                                              Affirmed.